1998 ME 83

**STATE of Maine**

v.

**Lawrence J. LEWIS.**

Supreme Judicial Court of Maine.

Argued Dec. 1, 1997.
Decided April 23, 1998.

Neale T. Adams, District Attorney, John M. Pluto, Dep. Dist. Atty. (orally), Caribou, for State.

Jeffrey M. Silverstein (orally), Billings & Silverstein, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Lawrence J. Lewis appeals from convictions of gross sexual assault (Class A) in violation of 17–A M.R.S.A. § 253 (Supp. 1997),[1] and unlawful sexual contact (Class C)

---

1. Title 17–A M.R.S.A. § 253 (Supp.1997) provides in pertinent part:

1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:

in violation of 17–A M.R.S.A. § 255 (Supp. 1997),[2] following a jury trial in the Superior Court (Aroostook County, *Pierson, J.*). Lewis contends, *inter alia,* that the court acted beyond its discretion and erred in various evidentiary rules, in its jury instructions, in failing to recuse, in failing to address Lewis's motion to dismiss, and in failing to take appropriate action regarding possible juror misconduct. Lewis also contends that the prosecutor in his closing argument impermissibly commented on Lewis's credibility and Lewis's failure to testify. We affirm the convictions and affirm the sentence. Because we agree with Lewis, however, that the order of restitution was improperly imposed by the court, we vacate that part of the sentence providing for restitution, and remand for reconsideration of restitution.

[¶ 2] The victim testified as to being sexually abused by Lewis, that the abuse first occurred in the middle of his third grade year, occurred thirty or forty times in all, and did not stop until he was in the fourth or fifth grade, when he moved into his foster mother's residence. The first allegations of abuse were made about five months after the victim moved out of Lewis's house, to the caseworker assigned to the family by the Department of Human Services. The victim was enrolled in a group home for sexually abused children and he worked with a clinical counselor in dealing with the sexual abuse.

### I.

[¶ 3] Lewis contends that his motion for recusal of the trial judge was improperly denied. In support of his contention, Lewis points out that the judge had rejected a plea that had been negotiated between Lewis and the State, imposed a lengthy sentence, made comments indicating that Lewis is a dangerous individual who showed no remorse or acceptance of responsibility, and denied Lewis post-conviction bail. Lewis's contention is without merit. Motions to recuse are "within the broad discretion of the trial court." *State v. Rameau,* 685 A.2d 761, 762 (Me.1996). Generally, only knowledge obtained by the judge from extra-judicial sources justifies a recusal. *Id.* (citing *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994)). *See Wood v. Wood,* 602 A.2d 672, 674 (Me.1992) (possibility that judge was influenced by evidence not admissible in present case was "wholly inadequate ground for disqualification"). Lewis makes no showing that the judge was influenced by an extra-judicial source. Because the grounds advanced by Lewis to support his argument for disqualification do not demonstrate "the deep-seated antagonism rendering a fair judgment impossible," *Rameau,* 685 A.2d at 763, the judge acted within his discretion in declining to recuse.

### II.

[¶ 4] Lewis also argues that the court erred by allowing the State to elicit from Penny Bohac, the victim's counselor in a group home for sexually abused children, statements made by the victim in some of his therapy sessions. Lewis contends that because the statements rebutted an express or implied charge that the victim was improperly influenced in his allegations of abuse against Lewis, the statements were in the nature of prior consistent statements. He argues that the statements are inadmissible pursuant to M.R. Evid. 801(d)(1),[3] however, because they were made during and after the time the victim was subjected to the improper influence. *See State v. Swain,* 493 A.2d 1056, 1059 (Me.1985). We disagree. If such statements had been elicited by the State

....

(B) The other person, not the actor's spouse, has not in fact attained the age of 14 years.

**2.** Title 17–A M.R.S.A. § 255 (Supp.1997) provides in pertinent part:

1. A person is guilty of unlawful sexual contact if the person intentionally subjects another person to any sexual contact, and:

....

(C) The other person, not the actor's spouse, has not in fact attained the age of 14 years and the actor is at least 3 years older.

**3.** M.R. Evid. 801(d)(1) provides in pertinent part:

A prior consistent statement by the declarant, whether or not under oath, is admissible only to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

from Bohac *solely* for the purpose of rehabilitating the victim following the victim's cross-examination, then there may have been a question as to their admissibility pursuant to Rule 801(d)(1) as prior consistent statements. The defense, however, attacked the method of counseling used on the victim, arguing that the therapy sessions led the victim to make false and unfounded allegations. Bohac was called by the defense and questioned on the methods used during the victim's therapy, and on how the victim was counseled. The State, in its cross-examination of Bohac, elicited from her certain statements made by the victim in the context of the counseling sessions. Some of those statements were in the form of written exercises completed by the victim as part of the therapy sessions. Those statements aided Bohac in explaining the nature of the therapy. Although the statements were made prior to trial and, in large part, were consistent with the trial testimony of the victim, the purpose of their admission was to explain the methods used to counsel the victim, methods being attacked by Lewis. They were not admitted pursuant to Rule 801(d)(1). Consequently, there was no error in their admission.

### III.

[¶ 5]  Lewis also contends that the court erred by failing to interview all of the jurors following the disclosure to the court that Lewis's attorney, during the trial and after the testimony of the victim, overheard one juror make a statement to another[4] suggesting that one of the jurors may have lacked impartiality. The attorney could not recall which of the jurors he overheard. Using the names on the juror list, Lewis's attorney narrowed down to six those jurors whom he believed *could* have been part of the conversation he overheard. Of those jurors Lewis's attorney identified from the jury list, the court interviewed the four that matched juror numbers of jurors actually sitting on the case. Two of the jurors that Lewis's attorney identified from the list of jurors were not sitting on Lewis's case and therefore were not interviewed. None of the interviewed

jurors recalled any such conversation. In accordance with Lewis's request, the court made a point of emphasizing to the jury in its general instructions that they should weigh all the evidence. Lewis requested no further action.

[¶ 6]  We have said that the court should interview individual jurors when their impartiality is questioned. *State v. Gilman,* 637 A.2d 1180, 1182 (Me.1994). The court in this case interviewed all those jurors identified as possibly being the two jurors involved in the overheard conversation, who actually were sitting on Lewis's case. In addition, the court gave a jury instruction requested by the defense. Lewis did not request any further action, and made no motion for a mistrial. In such circumstances the court committed no error and acted within its discretion.

### IV.

[¶ 7]  In his closing argument, the prosecutor spoke of the victim, that he was in a home for abused victims and was learning to take responsibility for himself, and compared him to Lewis who, the prosecutor stated, "is not taking any responsibility." No objection was made by Lewis. On appeal, Lewis contends that the prosecutor's comments are an expression of personal opinion as to Lewis's guilt, and constitute an improper comment on Lewis's decision not to testify. We do not view that statement as an expression of the prosecutor's personal opinion. The statement could be construed, however, as an indirect comment on Lewis's decision not to testify in his own behalf. We have made clear that it is improper for a prosecutor to refer in any way to a defendant's failure to testify. *State v. Ingalls,* 544 A.2d 1272, 1274–76 (Me.1988), *State v. Tibbetts,* 299 A.2d 883, 889 (Me.1973). The prosecutor's comment here, however, was indirect, was not objected to, and in view of the court's instruction to the jury that they should draw "no inference whatsoever" from the defendant's decision not to testify, does not rise to the level of obvious error. *See*

---

4. Defense counsel told the court that he overheard the juror say: "Poor little guy. I think he did quite well. I can't remember all the things that I am supposed to remember."

*State v. Ashley,* 666 A.2d 103, 107 (Me.1995) (jury instruction not to attach any significance to defendant's decision not to testify minimized jury speculation as to why an accused would remain silent); *see also State v. Comer,* 644 A.2d 7, 9 (Me.1994) (obvious error is error "so highly prejudiced that it taints the proceedings and virtually deprives the defendant of a fair trial") (citing *State v. True,* 438 A.2d 460, 468 (Me.1981)).[5]

## V.

[¶ 8] In addition, Lewis challenges his sentences. For his conviction for gross sexual assault, the court imposed a sentence of fourteen years to the Department of Corrections, with all but nine years suspended, followed by a probationary period of six years.[6] Lewis contends that the court impermissibly increased the nine-year basic period of imprisonment to a maximum period of imprisonment of fourteen years,[7] based on his past criminal history. Lewis argues that in enhancing the basic period of imprisonment, the court gave undue weight to his record of prior criminal convictions as an aggravating

factor[8] and insufficient consideration in mitigation to his history of mental difficulties, including the fact that he had been declared mentally incompetent in the 1970's when the more serious prior convictions occurred.

[¶ 9] The basic period of imprisonment is determined by the court based on "the particular nature and seriousness of the offense committed by the offender." 17–A M.R.S.A. § 1252–C(1) (Supp.1997). We review the basic period of imprisonment *de novo,* but because we recognize that the trial court is better able to evaluate the aggravating and mitigating factors that can be considered in determining the maximum period of imprisonment, our review of the maximum period of imprisonment imposed by the trial court is deferential. *State v. Rosado,* 669 A.2d 180, 184 (Me.1996). Consideration of the defendant's character, including his history of mental illness, his prior criminal record, the effect of the offense on the victim, and the protection of the public interest, *see* 17–A M.R.S.A § 252(C), are best left to the trial court to sort out and appropriately consider

---

5. We also review for obvious error Lewis's contention, asserted for the first time on appeal, that "the State forced him to trial," and that it could not do so having already accepted his plea of *nolo contendere.* The docket entries indicate that Lewis made several attempts to withdraw his plea, that he was ultimately allowed to do so, and that he then proceeded to trial, objecting to neither the docket entries nor to the fact that he was going to trial on the original charges. *State v. Riggs,* 444 A.2d 352, 354 (Me.1982) (alleged variance in docket entries was not raised prior to appeal and thus is reviewed by the "manifest error affecting substantial rights" standard).

The decision to grant or deny a motion to withdraw a plea is "based upon the facts and circumstances of the particular case with the ultimate purpose of furthering justice." *State v. Malo,* 577 A.2d 332, 333 (Me.1990). *Cf. State v. Comer,* 584 A.2d 638, 640 (Me.1990) (trial court's decision to deny a motion to withdraw a guilty plea is reviewed only for an abuse of discretion). Lewis's argument now that he was forced to trial is belied by his persistent attempts to withdraw his plea and stand trial. He demonstrates no obvious error. *See also State v. Beal,* 446 A.2d 405, 408–09 (Me.1982) (rejecting the argument that acceptance of the plea is "a conviction as conclusive as a jury verdict" and thus irrevocable).

Lewis also contends that the court erred by denying his motions to require a psychological examination of the victim, a denial the court

based on a finding that Lewis did not meet the "compelling" need standard set out in *State v. Pelletier,* 534 A.2d 970, 972 (Me.1987) (before a court will order the victim of an alleged crime who is not a party to the case before the court to undergo psychological testing, there have to be reasons "far more compelling" than to determine the credibility of a child-victim as a witness). The determination of a child witness's credibility is a matter that is left solely to the factfinder. *See id.* The denial of Lewis's motion was within the court's discretion.

6. In addition, Lewis received a four-year concurrent sentence on the conviction for unlawful sexual contact. Lewis's leave to appeal his sentence was granted by the Sentence Review Panel pursuant to 15 M.R.S.A. § 2152 (Supp.1997).

7. Pursuant to the three-step sentence procedure set out in 17–A M.R.S.A. § 1252–C (Supp.1997), the court determined Lewis's basic period of imprisonment to be nine years, the maximum period of imprisonment to be fourteen years, and suspended five of those 14 years to arrive at a final sentence. *See State v. Hewey,* 622 A.2d 1151, 1154 (Me.1993).

8. Lewis's criminal record included convictions for aggravated assault in 1971, armed robbery in 1974, assault in 1988, and disorderly conduct in 1992.

as aggravating and mitigating circumstances. *See State v. DeWalt,* 684 A.2d 1291, 1293–94 (Me.1996) (The court acted well within its discretion when it balanced DeWalt's mental illness against the aggravating factors such as his prior criminal record and probability of re-offending.). Moreover, in this case the court made note of the young age of the victim and Lewis's lack of remorse after the verdict and considered them to be serious aggravating factors in setting a fourteen-year maximum period of imprisonment. We discern no error or abuse of discretion in that determination. *See State v. Phelps,* 651 A.2d 369, 371 (Me.1994) (lack of remorse was a legitimate aggravating factor justifying the maximum period of imprisonment arrived at by the court).

## VI.

[¶ 10] We agree with Lewis's contention that, because it leaves to future determination "the amount of restitution to be paid" and "the time and method of payment," the court's restitution order violates 17–A M.R.S.A §§ 1323 and 1326 (Supp.1997). As a condition of his probation the court ordered Lewis to pay restitution toward the victim's counseling and treatment in the amount of $166,523, but on a schedule to be determined by the court. The court ordered that a hearing would be scheduled on Lewis's release from imprisonment to determine what portion of the $166,523 Lewis should pay. Such a restitution order is contrary to sections 1323(1)⁹ and 1326.[10] The time and method of payment must be specified in a restitution order and cannot be deferred to a later time. *State v. Berube,* 1997 ME 165, ¶ 20, 698 A.2d 509, 516.

[¶ 11] Other contentions of Lewis are without merit and do not require discussion.

The entry is:

**9.** 17–A M.R.S.A. § 1323 (Supp.1997) provides in pertinent part:
> § 1323. **Mandatory consideration of restitution**
> 1. **Inquiry as to victim's financial loss.** The court shall, whenever practicable, inquire of a prosecutor, police officer or victim with respect to the extent of the victim's financial loss, and order restitution where appropriate. *The order for restitution shall designate the amount*

Judgments of conviction affirmed. Sentence affirmed, except that part of the sentence providing for restitution, which is vacated. Remanded for the reconsideration of restitution.

*of restitution to be paid and the person or persons to whom the restitution will be paid.* *(emphasis added).*

**10.** 17–A M.R.S.A. § 1326 (Supp.1997) provides in pertinent part:

> When restitution is authorized, the time and method of payment or of the performance of the services must be specified. . . .